IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| CARI A.S.,<br>    Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br>    Defendant. | Case No. 4:20-cv-04077-SLD-JEH |

**Report and Recommendation**

Now before the Court is the Plaintiff's Motion for Summary Judgment (Doc. 15) and the Defendant's Motion for Summary Affirmance (Doc. 16). This matter has been referred for a report and recommendation. The Motions are fully briefed, and for the reasons stated herein, the Court recommends the Plaintiff's Motion for Summary Judgment be denied and the Defendant's Motion for Summary Affirmance be granted.[1]

**I**

Cari A.S. filed an application for supplement security income (SSI) on April 4, 2016, alleging disability beginning on April 1, 2016. Her claim was denied on July 18, 2016 and upon reconsideration on November 14, 2016. Cari filed a request for hearing concerning her SSI application which was held on August 23, 2018 before the Honorable Kellie Wingate Campbell (ALJ). At the hearing, Cari was represented by an attorney, and Cari and a vocational expert (VE) testified. Following the hearing, Cari's claim was denied on January 7, 2019. Her request

---

[1] References to the pages within the Administrative Record will be identified by AR [page number]. The Administrative Record appears at (Docs. 10, 11) on the docket.

for review by the Appeals Council was denied on February 4, 2020, making the ALJ's Decision the final decision of the Commissioner. Cari timely filed the instant civil action seeking review of the ALJ's Decision on March 31, 2020.

## II

At the August 2018 hearing, Cari was 49 years old and lived alone in an apartment paid for by her township. She had an associate degree in general studies and last worked in 2010. She previously worked at a local café as a waitress, cook, and dishwasher, and she also previously worked as a bus monitor for the local school bus system. On her Form SSA-3368, Cari stated that the following conditions limited her ability to work: atrial fibrillation; anxiety depression; herniated discs; arthritis; and spondylolisthesis[2]. AR 206.

Cari appeared at the hearing using a cane which she said she had been using for a year and a half. She used the public bus about twice per month to go to doctors' appointments and the grocery store. She testified that she used a push cart at the grocery store and used it to balance. She took breaks at the grocery store by leaning forward more and taking more weight off. She used a pull cart to get her groceries on the bus and back home. She said 15 or more days per month she could not physically make the trip to the grocery store. Riding in a car bothered her because it caused more neck, back, and hip pain, pressure, and numbness. During the hour-long train ride to get to the hearing, Cari said she stood up and walked the aisle a bit and shifted position. She used a device, the "Reacher," so that she did not have to fully bend to put on socks. AR 74. She was prescribed the Reacher and a shower chair when she came home from a nursing home stay which lasted from July 18 to August 7, 2017. Cari testified that in a typical eight-hour

---

[2] Spondylolisthesis: "Any forward slipping (subluxation) of one vertebra on the one below it." Taber's Online, https://www.tabers.com/tabersonline/view/Tabers-Dictionary/729693/all/spondylolisthesis (last visited May 3, 2021).

day, she laid down three to four hours, and pain caused her difficulty sleeping at night.

Cari also testified that she shrunk two and a half inches due to "[s]evere osteoporosis." AR 52. She thought she lost "about 30 pounds" within the last year due to her back injury. *Id*. She said she was born with spondylolisthesis at L4, and since then, she suffered a compression fracture of the neck (from trauma), slipped and bulging discs in the back, osteoporosis, and arthritis. She said her neck pain traveled to her shoulders, her left arm to the fingertips, her upper back, and towards the base of her head, and she had the pain daily. She testified to difficulty moving her head side to side and up and down, and when she moved her head up and down things became a "little blurry." AR 56. She explained that she also had problems with her right arm, hand, and elbow. She said she had pain, tingling, pressure, and numbness throughout her body. She said the heaviest thing she was able to lift without pain was three pounds, and that restriction was given to her by her primary care doctor, Weili Zhang, D.O., and "previous doctors over the years." AR 60. She said she had hip displacement and doctors told her to avoid steps. The ablation procedure she had done in 2015 stopped her from "going into full-blown episodes" of atrial fibrillation, but she still experienced the "flutter of the offbeat" if she did anything overly strenuous. AR 70. She testified to her issues with migraine headaches and diarrhea as well.

### III

At Step Two of the disability analysis, the ALJ determined Cari had the following severe impairments: degenerative disc disease; arthritis; cardiac arrhythmias; fibromyalgia; and osteoporosis. AR 17. The ALJ found Cari's migraines, hernia status-post repair, MRSA, thyroid nodule, and COPD were non-severe, and detailed how each did not have more than a minimal effect on her ability to work, had not lasted or were not expected to last at least 12 months, or

were not expected to result in death.  As for Cari's testified-to problems with her right elbow and radicular pain to her left arm and hands, the ALJ found left arm cervical radiculopathy and right elbow tendonitis/tendinopathy were not medically determinable impairments due to a lack of objective evidence.  At Step Four, the ALJ made the following residual functional capacity (RFC) assessment:

> [T]he claimant has the [RFC] to perform light work as defined in 20 CFR 416.967(b) with the following exceptions.  The claimant can never climb ladders, ropes or scaffolds or be exposed to unprotected heights or hazardous work environments.  She can occasionally climb stairs or ramps; occasionally stoop, crouch, kneel or crawl; and occasionally overhead reaching with either upper extremity.  She should avoid rapid or repetitive turning of the neck.  The claimant is limited to remembering and carrying out simple, routine tasks and making simple work-related decisions.  She cannot perform production pace tasks that require strict hourly goals.  The claimant should avoid concentrated exposure to extreme heat or extreme cold; avoid concentrated exposure to vibration; and to noise above a moderate level as defined by Appendix D of the Selected Characteristics of Occupations.  She must avoid walking on uneven terrain.  She requires occasional use of a cane to balance.  She will be off-task five percent of the workday.

AR 20.

At the outset of the ALJ's consideration of Cari's statements about the intensity, persistence, and limiting effects of her symptoms, the ALJ explained, those statements "are inconsistent because the claimant's pattern of treatment and associated clinical findings do not support the degree of limitation described in her allegations and testimony."  AR 21.  The ALJ first explained the environmental restriction from hazards and no climbing on ladders, ropes, or scaffolds was responsive to Cari's history of atrial fibrillation "in case of recurrence."  AR 22.  The ALJ later explained those limitations were also responsive to any medication side effects such as fatigue or dizziness.

In reaching her conclusions as to the limitations presented by Cari's spinal impairments, the ALJ discussed the medical evidence of those impairments dated between 2015 and 2018 which included imaging results, treatment providers' (including a pain specialist's) examination findings and notes, emergency room visits, Cari's temporary stay in a nursing home, Cari's receipt of physical therapy, and the medication Cari was prescribed. Specifically, a March 2015 lumbar spine MRI showed "evidence of degenerative disc disease, specifically grade 2 isthmic spondylolisthesis at L5-S1 with some resulting foraminal stenosis, and disc degeneration at L4-5 and a small disc bulge at L3-L4." AR 22 (citing AR 469). A repeat May 2017 lumbar spine MRI showed "high grade biforaminal stenosis at L5-S1, an L4-5 central disc protrusion, and L3-L4 left paracentral disc protrusion." *Id.* (citing AR 1369). As for Cari's testified-to compression fracture of the cervical spine, the ALJ cited a record where Cari was assessed with cervicalgia and considered that medical history notes, including her own reports, reflected compression fracture of the cervical spine and a herniated disc at C6-C7. The ALJ pointed out that "correlating imaging findings are not noted." AR 22. Her April 2018 hip x-ray showed bilateral hip dysplasia, but no dislocation, and an April 2018 MRI showed preservation of the hip joint spaces with no acute fracture or dislocation.

After addressing the medical records and Cari's testimony and representations as to her daily activities, the ALJ stated, "In consideration with her conservative pattern of treatment and limited clinical findings, the claimant's daily activities do not support a disabling degree of limitations." AR 24. The ALJ next addressed the State Agency doctors' opinions who limited Cari to sedentary exertional level work with frequent climbing of ramps or stairs, balancing, kneeling, and crouching, and occasional stooping, crawling, and climbing of ladders, ropes, or scaffolds. She gave those opinions "some weight." *Id.* The ALJ

5

reasoned that Cari's spinal impairments, fibromyalgia, and history of atrial fibrillation supported "some reduction in exertional capacity," but she did "not have the limited strength or other focal deficits that entirely support a reduction to sedentary exertional work." *Id.* The ALJ also determined the State Agency physicians' opined-to limitation of sedentary exertional work was unsupported by Cari's own activities. The ALJ nevertheless limited Cari from any climbing upon ladders, ropes, or scaffolds, allowed her the occasional use of a cane for balance, limited her to no concentrated exposure to vibration "to prevent exacerbation of her spinal impairments," and provided she should avoid walking on uneven terrain. *Id.* As for the third-party statements provided by Cari's daughter and ex-husband, the ALJ gave them "only limited weight" because they indicated Cari had a very restricted lifting capacity. AR 25. The ALJ noted that they reported a walking capacity greater than Cari described where her daughter said Cari "sometimes" used a cane and her ex-husband reported Cari's occasional use of a cane. *Id.*

IV

Cari argues the RFC determination was not supported by substantial evidence.

A

The Court's function on review is not to try the case de novo or to supplant the ALJ's findings with the Court's own assessment of the evidence. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271 (7th Cir. 1989). Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). The Court's function is to determine whether the

ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971), *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

In order to qualify for disability insurance benefits, an individual must show that his inability to work is medical in nature and that he is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of the employer are irrelevant in determining whether a plaintiff is eligible for disability. *See* 20 C.F.R. § 404.1566. The establishment of disability under the Act is a two-step process.

First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980). The factual determination is made by using a five-step test. See 20 C.F.R. § 416.920. In the following order, the ALJ must evaluate whether the claimant:

1) currently performs or, during the relevant time period, did perform any substantial gainful activity;

2) suffers from an impairment that is severe or whether a combination of his impairments is severe;

3) suffers from an impairment which meets or equals any impairment listed in the appendix and which meets the duration requirement;

    4)      is unable to perform his past relevant work which includes an assessment of the claimant's residual functional capacity; and

    5)      is unable to perform any other work existing in significant numbers in the national economy.

*Id.* An affirmative answer at steps 3 or 5 leads to a finding that the plaintiff is disabled. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005).

The plaintiff has the burdens of production and persuasion on steps 1 through 4. *Id.* However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some other type of substantial gainful employment. *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011).

In the instant case, Cari claims error on the ALJ's part at Step Four.

## B

Cari faults the ALJ for, among other things, improperly assessing a RFC of light work without an opinion from any treating or examining physician, erroneously relying upon a treating doctor's observation that her pain and weakness were out of proportion to imaging findings dated before her alleged onset date, and erroneously considering her activities of daily living. The Commissioner disputes that the ALJ's RFC finding was not supported by substantial evidence where the ALJ reasonably considered the objective evidence of Cari's physical impairments[3] and reasonably weighed the medical opinion evidence regarding Cari's physical limitations.

---

[3] As the Commissioner points out, Cari does not challenge the ALJ's assessment of her mental limitations, and so the Court limits its analysis to the ALJ's assessment of Cari's physical limitations. *See Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013) (explaining that an argument not raised in the district court is waived); *Jones v. Shalala*, 10 F.3d 522, 525 n.4 (7th Cir. 1993) ("Issues which are not discussed in the body of the brief are generally waived").

A claimant's RFC "is the most he can still do despite his limitations." 20 C.F.R. § 416.945(a)(1). An RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p; *see also Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001) ("In assessing the claimant's RFC, the ALJ must consider both the medical and nonmedical evidence in the record"). "In determining an individual's RFC, the ALJ must evaluate all limitations that arise from medically determinable impairments, even those that are not severe[.]" *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009).

The Court begins with one of Cari's last arguments. Cari argues the ALJ "created her own [RFC] assessment." Plf's MSJ (Doc. 15 at pg. 10). Rightly so. Per 20 C.F.R. § 416.927 (which Cari says should apply here), the final responsibility for deciding the issue of a claimant's RFC is reserved to the Commissioner. 20 C.F.R. § 416.927(d)(2). Therefore, the fact that the ALJ did not adopt any one doctor's opinion in its entirety does not render the RFC finding insufficiently supported or that the ALJ impermissibly made independent medical findings. As for the ALJ's discussion of the medical evidence, discussed *infra*, it was sufficient.

The ALJ detailed Cari's March 2015 MRI results of her lumbar spine, her continued complaints of back pain to medical providers, her own reports of a compression fracture in the cervical spine, her May 2017 MRI results of her lumbar spine, her visits to a pain specialist, her receipt of physical therapy during a temporary nursing home stay, and her osteoporosis. While the ALJ discussed a doctor's note in 2016 that Cari's reported pain and weakness were out of proportion to the 2015 MRI findings, the ALJ discussed additional evidence which undermined her allegations of physical pain. The ALJ considered evidence that Cari failed to show for two pain management appointments in 2016, she retained

normal range of motion with no focal deficit, medical providers noted Cari's drug-seeking behavior, Cari had full muscle strength in all major muscle groups except for slightly reduced strength in the left hip flexors and right knee and foot extensors in July 2017, and she had 4/5 strength throughout her extremities and a normal gait in June and July 2018. The ALJ considered that Cari complained of pain after she did "lots of laundry" and going grocery shopping, after she carried a laundry basket up nine flights of steps, after she struck her tailbone on a bookcase, after she was struck by another person's dropped laundry basket, and after she struck her hip on a toilet paper holder after squatting down to assist her granddaughter. AR 22 (citing AR 771).

The ALJ also considered Cari's primary care provider's October 2017 note at which time Cari requested disability paperwork. After the doctor informed her he would not fill out the paperwork at that time and he observed that she was visibly upset, the doctor subsequently observed Cari put on her shoes easily, walk straight and fast with a normal gait and carried her cane in her hand without using it (she walked into the appointment with a cane), and open a heavy examination room door. The doctor further noted that while Cari's voice expressed pain, her body posture and ease of movement did not suggest what her voice was expressing. The ALJ also considered that Cari "had a general lapse in significant complaints or treatment" between October 2017 and February 2018. AR 23.

The ALJ summarized that "a review of the claimant's treatment pattern and findings do not suggest the degree of limitation described." AR 23. In support, the ALJ explained that while Cari was assessed with fibromyalgia, she sought no ongoing care. She received only a few injections and had a general lack of orthopedic or ongoing pain management care to treat her degenerative disc disease. The ALJ further noted Cari generally had intact sensation, motor, and coordination findings and was generally noted to have intact ambulation. Though

Cari was provided a temporary lifting restriction of no greater than five pounds, the ALJ explained she gave that restriction no weight because it was not an assessment intended to evaluate Cari's functioning through the period under consideration and was rendered with regard to her subjective complaint of neck pain. As for that neck pain, the ALJ limited the speed and frequency of neck turning and overhead reaching where the limitation was supported by Cari's complaints of some neck pain and the findings in the medical record of tenderness and pain with range of motion.

The Court can trace the path of the ALJ's reasoning between the foregoing discussion of the medical evidence and her conclusion that Cari's subjective statements of limitation were out of proportion to her actual functioning. *See Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (stating that an ALJ must "sufficiently articulate his assessment of the evidence to assure us that the ALJ considered the important evidence . . . and to enable us to trace the path of the ALJ's reasoning"). It is readily apparent from the ALJ's discussion of the record evidence that the evidence of Cari's drug-seeking behavior, the evidence of the extent to which Cari actually engaged in daily activities in particular instances, the extent of the treatment she received throughout the relevant period, and her doctor's observation of her movements in October 2017 compelled the ALJ to find Cari was only as limited as set forth in her RFC finding. That evidence is substantial evidence. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) ("[Substantial evidence] means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion").

As for the ALJ's consideration of Cari's daily activities, Cari argues that when she attempted "normal" activities of daily living she ended up at the hospital with pain which supports her credibility rather than undercuts it such that the ALJ's consideration of those daily activities was in error. The ALJ did not merely

rely on evidence of the fact that Cari engaged in "normal" activities of daily living to reject her subjective statements as to the extent of limitation caused by her physical symptoms. Rather, the ALJ found relevant to her consideration of the intensity, persistence, and limiting effects of Cari's symptoms the instances in which Cari did not simply engage in daily activities, but by her own reports she did so to excess in certain instances. For instance, Cari reported that she had lots of pain after doing "lots of laundry" and going grocery shopping, had an exacerbation of pain after carrying a laundry basket up nine flights of steps, and her back hurt though she had been helping care for her five and two-year-old grandchildren. She bought and transported "five bags" of groceries. AR 24 (citing Cari's testimony). As for the ALJ's consideration of Cari's reported instance when she "squatted down" to assist her granddaughter, the ALJ explicitly explained why that was relevant to her evaluation of Cari's symptoms. The ALJ stated: "Of note, the claimant testified that she used a "reacher" ever since her July 2017 nursing home stay to help her reach overhead items or perform actions below the waist such as donning her socks." AR 23. Similarly, the ALJ explained the significance of the evidence that Cari carried a laundry basket up multiple flights of steps, stating that "her ability to engage in such an activity does not suggest an inability to perform work within the [RFC] described." AR 24. The ALJ was forthright about the fact that Cari reported pain as a result of engaging in her daily activities; nothing in the Decision suggests the ALJ placed an undue emphasis upon Cari's daily activities or otherwise misrepresented the manner in which she engaged in them. *See Jeske v. Saul*, 955 F.3d 583, 593 (7th Cir. 2020) (explaining that the ALJ simply considered the claimant's activities to determine whether they were as severe and limiting as the claimant alleged rather than improperly reasoning that the claimant's daily activities were as demanding as those of full-time work).

As for Cari's argument that "it is also possible the adrenaline from [her] anger masked her pain" at the time her doctor noted in October 2017 that she walked out of his office with ease such that the ALJ placed undue emphasis on that note in the latter's consideration of the medical evidence, Cari goes a step too far.  The Court, on review, is not tasked with considering a "possible" explanation for a claimant's documented conduct which, conveniently, is favorable to the claimant's position.  As Cari, acknowledges, her doctor found her observed behavior "interesting" such that he noted it, and the ALJ likewise found it pertinent enough to note it.  The October 2017 record said what it did, the ALJ accurately recited it, and the ALJ determined in light of that and other evidence that the extent of pain Cari reported/testified to was undermined by her own behavior at various times and was in excess of what was borne out by the medical record as a whole.

It appears Cari believes her 2017 MRI results are the smoking gun in the record given that she argues the more severe results of her 2017 MRI (versus her 2015 MRI results) render several portions of the ALJ's Decision erroneous.  That argument is unpersuasive.  Those 2017 MRI results were one medical record among many other records, medical and non-medical.  The ALJ considered the variety of evidence in the record and ultimately found that the alleged level of intensity, persistence, and limiting effects of Cari's symptoms was "not entirely consistent with the medical evidence and other evidence in the record[.]"  AR 21.  Cari essentially (and impermissibly) asks the Court to reweigh the evidence and find the 2017 MRI results are worthy of the greatest weight such that all other evidence consistent with those results is the only evidence that matters. *See Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004) (explaining that in reviewing an ALJ's decision, the court cannot reweigh evidence, resolve conflicts in the record, decide questions of credibility, or otherwise substitute its own judgment for that of the

Commissioner). Significantly, imaging findings alone do not, of course, establish a claimant's actual level of limitation per the Social Security Administration's own regulations. *See, e.g.,* 20 C.F.R. § 416.929(c)(1) ("When the medical signs or laboratory findings show that you have a medically determinable impairment(s) that could reasonably be expected to produce your symptoms, such as pain, *we must then* evaluate the intensity and persistence of your symptoms so that we can determine how your symptoms limit your capacity for work") (emphasis added). There is nothing to suggest, and Cari does not argue, that the ALJ ignored or otherwise failed to consider contrary evidence. *See Spicher v. Berryhill*, 898 F.3d 754, 757 (7th Cir. 2018) (stating that "an ALJ may not ignore evidence that undercuts [his] conclusion"); *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012) (explaining that an ALJ must connect the evidence to the conclusion, and in doing so, "may not ignore entire lines of contrary evidence"). Indeed, the ALJ cited the repeated instances in the record when Cari complained of ongoing pain, where she reported and was observed using a cane, where examinations revealed decreased range of motion secondary to pain, and when Cari spent time in a nursing home.[4] As the ALJ also made no error in her evaluation of Cari's symptoms, discussed *supra*, the ALJ made no reversible error in her consideration of the 2017 MRI results.

Finally, the Court need not address Cari's argument that she would grid under the vocational guidelines at age 50 for sedentary work. As the

---

[4] Cari argues the ALJ cited her stay in a nursing home "as a basis for rejecting her allegations of less than sedentary and formulating an RFC of Light [sic] without opinion evidence from a treating or examining physician." Plf's MSJ (Doc. 15 at pg. 10). This argument is underdeveloped. Also, the ALJ did not cite Cari's nursing home stay as a basis for rejecting her allegations of physical limitation. The ALJ considered Cari's nursing home stay in her chronological discussion of the record medical evidence and in her consideration of the discrepancies between Cari's hearing testimony of functioning and her actual functioning. *See* AR 23 (citing Cari's testimony that she used a "reacher" ever since her July 2017 nursing home stay).

Commissioner argues, the ALJ's RFC finding limited Cari to light, not sedentary, work, and for the reasons set forth above, the RFC finding is supported by substantial evidence.

V

For the reasons set forth above, it is recommended that: 1) the Plaintiff's Motion for Summary Judgment (Doc. 15) be denied; 2) the Defendant's Motion for Summary Affirmance (Doc. 16) be granted; 3) The Clerk of Court be directed to enter judgment as follows: "IT IS ORDERED AND ADJUDGED that the decision of the Defendant, Andrew Saul, Commissioner of Social Security, denying benefits to the Plaintiff, Cari A.S., is AFFIRMED."; and 4) this matter be terminated.

The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk within fourteen (14) days after service of this Report and Recommendation. FED. R. CIV. P. 72(b)(2); 28 U.S.C. § 636(b)(1). Failure to object will constitute a waiver of objections on appeal. *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999); *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995).

*It is so recommended*.

Entered on May 4, 2021.

s/Jonathan E. Hawley
U.S. MAGISTRATE JUDGE